IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STEVE VATIDIS, in his capacity as )
Principal Shareholder, )
 )
    Plaintiff/Counterclaim Defendant, )
 )
            v. ) C.A. No. 18-998 (MN)
 )
TRIMBLE, INC., )
 )
    Defendant/Counterclaim Plaintiff. )

## **MEMORANDUM OPINION**

Todd C. Schiltz, DRINKER BIDDLE & REATH LLP, Wilmington, Delaware. Paul R. Mastrocola, Andrea L. Martin, Michael A. DeIulis, BURNS & LEVINSON LLP, Boston, Massachusetts. Scott R. Haiber, HOGAN LOVELLS US LLP, Baltimore, Maryland. Pieter Van Tol, HOGAN LOVELLS US LLP, New York, New York. *Attorneys for Plaintiff / Counterclaim Defendant.*

Joel Friedlander, Christopher M. Foulds, Christopher P. Quinn, FRIEDLANDER & GORRIS, P.A., Wilmington, Delaware. Teresa H. Michaud, BAKER & MCKENZIE LLP, Los Angeles, California. *Attorneys for Defendant, Counterclaim Plaintiff.*

August 5, 2019
Wilmington, Delaware

*[signature: Maryellen Noreika]*

**NOREIKA, U.S. DISTRICT JUDGE**

This action arises out of a Share Purchase Agreement ("SPA") pursuant to which defendant Trimble, Inc. ("Trimble") acquired from plaintiff Steve Vatidis ("Vatidis") a collection of software companies (collectively, "the Target Companies"). Post-closing, Vatidis, in his capacity as the shareholder representative, initiated this action against Trimble, asserting claims for breach of contract. (D.I. 1). Trimble, in return, asserted counterclaims for breach of contract (Count I), fraudulent inducement (Count II), fraudulent concealment (Count III), and copyright infringement (Count IV). (D.I. 6).

Currently pending before the Court is Vatidis' Partial Motion to Dismiss Counterclaim Counts II, III, and IV. (D.I. 16). The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1367. For the following reasons, Vatidis' motion to dismiss is GRANTED.

## I. BACKGROUND

On July 29, 2014, the parties entered into the SPA under which Trimble agreed to purchase the Target Companies from the shareholders of those companies ("the Shareholders"). (D.I. 1 ¶ 5). The SPA identifies Vatidis as the "Principal Shareholder," which makes him the authorized representative of all Shareholders. (D.I. 19 at § 10.1). The transaction closed on August 15, 2014. (D.I. 1 ¶ 6).

In Article 3 of the SPA, the Target Companies made representations and warranties. Trimble's counterclaim identifies seven representations, which are summarized as follows:

- The Target Companies had the right to use, and had not breached any contracts governing third party intellectual property. (D.I. 6 ¶ 11 (a) (citing SPA § 3.14(a)(iii)).

2

- The Target Companies had "performed all of their respective obligations required to be performed under" a third-party contract for use intellectual property. (*Id.* ¶ 11 (b) (quoting SPA § 3.15(b)(ii)).

- The Target Companies were not "in breach or default" of any contract with a third-party. (*Id.* ¶ 11 (c) (citing SPA § 3.15(b)(iii)).

- The Target Companies' Financial Statements were "correct and complete in all material respects." (*Id.* ¶ 11 (d) (quoting SPA § 3.5)).

- The Target Companies had no Liabilities other than those represented on the Balance Sheet or set forth in Section 3.6 of the Disclosure Letter, with the exception of Liabilities incurred in the ordinary course of business after the Balance Sheet Date not exceeding $250,000 individually. (*Id.* ¶ 11 (e) (citing SPA § 3.6)).

- The Target Companies have, within the applicable time limits, paid all Tax that they have become liable to pay. (*Id.* ¶ 11 (f) (citing SPA § 3.16(g)).

- The Novated Contracts will be assigned to one or more of the Acquired Companies. (*Id.* ¶ 11 (g) (citing SPA § § 1.7, 5.12(b), 5.3(a)).

Trimble's counterclaim also identifies three amounts for which it is purportedly entitled to reimbursement from Vatidis. First, at the time Trimble acquired the Target Companies, about half were using a software product from Uniface. (D.I. 1 ¶¶ 32-34). When Trimble contacted Uniface post-closing to discuss the proper calculation of royalty payments, Uniface alleged that the Target Companies were using the Uniface software without a valid license and without paying royalties in violation of Uniface's copyright. (*Id.* ¶¶ 38, 45). Trimble settled its dispute with Uniface over the Target Companies' use of the Uniface software by paying $3.5 million and entering into a new license agreement requiring higher royalty payments. (*Id.* ¶¶ at 64-65). As a result, Trimble asserts that it has suffered a loss in the amount of the settlement, the increased costs to the business of paying higher royalties, and other damages related to the improper use of the Uniface software. Second, Vatidis is purportedly required to reimburse Trimble for a range of UK-imposed taxes,

penalties, interest, and surcharges totaling £390,814 ($510,795). (*Id*. ¶ 68). Third, Trimble is purportedly entitled to reimbursement from Vatidis for a range of unpaid third-party software license fees for VMWare, Microsoft SQL Server, Windows Server, SAP, and Oracle, as well as employee bonus payments, totaling $855,839. (*Id*. ¶ 69). The counterclaim does not elaborate on the circumstances surrounding the UK taxes, the non-Uniface software licenses, or the employee bonuses.

## II.  LEGAL STANDARD

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do in assessing a claim in a complaint." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452 (WCB), 2019 WL 2121395, at *2 (D. Del. May 15, 2019) (quoting *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, No. 12-1461 (LPS)(CJB), 2017 WL 239326, at *3 (D. Del. Jan. 19, 2017). Specifically, district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also*

*Fowler*, 578 F.3d at 210.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements.  *Twombly*, 550 U.S. at 555-56.  The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).  Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).  The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002).

## III. DISCUSSION

### A. Fraudulent Inducement

In Count II, Trimble asserts a claim for fraudulent inducement.  (D.I. 6 ¶¶ 80-86).  "Under Delaware law, the elements of fraudulent inducement and fraud are the same." *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *31 (Del. Ch. Dec. 3, 2018).  Those elements are:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.

*FdG Logistics LLC v. A&R Logistics Holdings, Inc.*, 131 A.3d 842, 857 (Del. Ch. 2016)*, aff'd sub nom. A & R Logistics Holdings, Inc. v. FdG Logistics LLC*, 148 A.3d 1171 (Del. 2016)*; E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461-62 (Del. 1999).

Because Count II alleges fraud, it is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Whatley v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016). Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud or mistake." In other words, here, the counterclaim must provide "all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue." *Whatley*, 657 F. App'x at 93 (*quoting In re Rockefeller*, 311 F.3d at 217). It must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

Count II must be dismissed, because Trimble fails to plead fraudulent inducement with the requisite particularity. Indeed, Trimble's allegations regarding fraudulent inducement are vague. Count II alleges that Vatidis made statements of material fact to Trimble "in connection with the SPA," but does not identify the statements. (D.I. 6 ¶ 81). Instead, the counterclaim recites the seven representations and warranties from the SPA described above, and leaves one to infer that those are the false statements on which Count II is based, because they are the only statements asserted that could be attributed to Vatidis and they are incorporated into Count II by reference. (D.I. 6 ¶ 80).

Even to the extent that such an inference were appropriate, however, Trimble fails to allege why each of the seven representations from the SPA was false at the time made, *i.e.*, at the time

that the SPA was executed. In Count I, Trimble alleges that Vatidis breached the SPA by making a false representation that the Target Companies had the right to use, and had not breached, any third-party contracts governing intellectual property when the Target Companies were in fact using the Uniface software without a valid license and without systematically paying royalties. (*Id.* ¶¶ 38, 78). Assuming Trimble's fraudulent inducement claim is a rehash of its breach of contract claim, this single allegation regarding a single representation is not enough to save the fraudulent inducement claim. It remains unclear whether Trimble is alleging that all of the other representations were false based on the same conduct, as the counterclaim does not link this particular conduct to any other representation. It is also unclear whether this is the only reason the intellectual property representation was false.[1]

The counterclaim frequently uses the term "including" to leave open the possibility that other software, other conduct, or other representations are also at issue. (*See*, *e.g.*, *Id.* ¶¶ 2, 72, 78). Indeed, the counterclaim mentions in a single sentence, without elaboration, that "Trimble is entitled to reimbursement from Vatidis for a range of unpaid third party software license fees (VMWare, Microsoft SQL Server, Windows Server, SAP, and Oracle)." (*Id.* ¶ 69). This does not rise to the level of particularity required by Rule 9(b).

Trimble argues that the counterclaim, "details the many ways in which [the] representations and warranties were subsequently shown to be false," and cites many paragraph in support. (D.I. 22 at 9 (citing D.I. 6 ¶¶ 38, 44, 50, 57, 58, 68, 69, 72-76)). The cited paragraphs, however,

---

[1] Notably, the counterclaim also does not allege facts creating a reasonable inference that the intellectual property representation was false *at the time made*. It alleges that the language in the agreement governing the Targeted Companies' use of the Uniface software "was ambiguous on key issues in dispute." (D.I. 6 ¶ 60). But the counterclaim does not allege when Uniface and Vatidis became aware that they had different interpretations of the license agreement or that Vatidis had reason to know that its interpretation was wrong.

recite either an adverse fact or a contract representation and leave to the Court the burden of matching up the adverse fact with the allegedly false statement. "A complaint is deficient for the purposes of Rule 9(b) when it relies on . . . 'puzzle' pleading." *In re Metropolitan Sec. Litig.*, 532 F. Supp. 2d 1260, 1279 (E.D. Wash. 2007). "[P]uzzle pleadings are those that require the defendant and the court to 'match the statements up with the reasons they are false or misleading.'" *Id.* (quoting *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 842 (N.D. Cal. 2000)). For all of the reasons above, Count II will be dismissed without prejudice.

### B. Fraudulent Concealment

In Count III, Trimble asserts a counterclaim for fraudulent concealment. (D.I. 6 ¶¶ 87-98). To state a claim for fraudulent concealment, a plaintiff must plead facts showing that: (1) the defendant deliberately concealed a material fact or remained silent in the face of a duty to speak, (2) the defendant acted with scienter, (3) the defendant had an intent to induce plaintiff's reliance upon the concealment, (4) causation, and (5) plaintiff suffered damages resulting from the concealment. *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987). A claim for fraudulent concealment must be pleaded with particularity. *Chesapeake Insurance Advisors, Inc. v. DeSola*, 2018 WL 565306, at *3 (Del. Super. Ct. Jan. 24, 2018).

Trimble has not pleaded with particularity facts supporting a fraudulent concealment claim. As an initial matter, Trimble alleges that Vatidis is liable for fraudulent concealment for either creating "false or inaccurate business records" or making deceptive "partial disclosures." (D.I. 6 ¶¶ 89, 92). Trimble does not, however, (1) identify what false or inaccurate "business records" Vatidis, or others at his direction, allegedly created or partially concealed; (2) explain how or why those business records were false or inaccurate; or (3) allege when the false and inaccurate business records were created, concealed, or partially disclosed.

In addition, Trimble's allegations regarding reliance are inconsistent and unclear. Fraudulent concealment requires that the defendant (counterclaim defendant) act with an intent to induce a plaintiff's (or here a counterclaim plaintiff's) reliance upon the concealment. *Nicolet*, 525 A.2d at 149. Trimble, however, interchangeably identifies itself, Uniface, and the shareholders, officers, directors, and employees of the Target Companies and an unrelated company named Raindrop Information Systems Ltd. as the objects of the purported concealment. (*See* D.I. 6 ¶ 91 (alleging that Vatidis concealed information from "both Uniface and Trimble"); *Id*. ¶ 92 (alleging that Vatidis concealed information from "other shareholders, officers, directors and employees of RIS and [the Target Companies]"); *Id*. ¶ 93 (alleging that Vatidis concealed information from Uniface alone)). And Trimble does not allege how Vatidis' purported concealment of information from these other entities and individuals was intended to induce Trimble's reliance on that concealment. As a result, Trimble has not pleaded with particularity that Vatidis concealed material facts with the intent to induce Trimble's reliance on the concealment. Trimble's claim for fraudulent concealment fails to meet the heightened pleading standard of Rule 9(b), and Count III will be dismissed without prejudice.

### C. Copyright Infringement

Count IV asserts a claim of copyright infringement against Vatidis, a U.K. citizen who resides in the U.K., based on Section 17(2) of the United Kingdom's Copyright, Designs and Patents Act, 1988 ("CDPA"). (D.I. 6 ¶¶ 107-15). Uniface is the current owner of the copyrights at issue, but Trimble asserts that, as part of the settlement, Uniface assigned Trimble any and all remaining claims or causes of action under the copyrights that it may have against the Target Companies and their former shareholders, which would include Vatidis. (*Id*.).

As a plaintiff, Trimble bears the burden of establishing standing. *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 838 (3d Cir. 1996). The settlement agreement submitted to the Court states that Uniface "agrees to assign" any remaining claims to "Trimble," which is defined as Manhattan Software Group Limited and Trimble Inc. "collectively." (D.I. 19). Even if the agreement referred to just Trimble Inc., under U.S. law, an "agreement to assign" a copyright is a "mere promise to assign rights in the future," *Bd. of Trustees of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841-42 (Fed. Cir. 2009), and, therefore, insufficient to confer standing over a copyright claim based on U.S. law. *See* 17 U.S.C. § 501(b); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883-90 (9th Cir. 2005).

Vatidis asserts that, under U.K. law, a "bare assignment" also fails to confer standing under the CDPA. (D.I. 17 at 15-17). Trimble argues that U.S. and U.K. law regarding the legal effect of bare assignments is inapposite, because the contract is governed by Dutch law. (D.I. 22 at 18). The parties also dispute whether Trimble has satisfied the statutory requirements for asserting a claim under the CDPA as a licensee. (D.I. 17 at 15-17; D.I. 22 at 18-19). Ultimately, Trimble has presented all of this to the court without providing reliable authorities explaining the operation of Dutch contract law and U.K. copyright law.[2] Accordingly, Trimble has failed to carry its burden of establishing that it has standing to assert a copyright infringement claim based on the CDPA, and Count IV will be dismissed without prejudice.

---

[2] It is not uncommon for parties arguing foreign law before the court to also provide expert affidavits from practitioners of that law explaining how it is interpreted and applied.

## IV. CONCLUSION

For the foregoing reasons, Vatidis' Partial Motion to Dismiss Counterclaim Counts II, III, and IV (D.I. 16) is granted. Counts II, III, and IV of Trimble's counterclaims are dismissed without prejudice. An appropriate order will be entered.